FILED by _____ EG _____ D.C.
ELECTRONIC

Oct 21 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 05-21918-civ-Lenard/Klein

| | |
|---|---|
| **JAIME JALIFE** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **ACE CAPITAL AND OTHERS** | ) |
| **UNDERWRITING AT LLOYD'S** | ) |
| **SEVERALLY SUBSCRIBING TO** | ) |
| **POLICY NO. A5BGLY170,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

## RESPONSE TO UNDERWRITERS MOTION TO DISMISS OR IN THE
## ALTERNATIVE TRANSFER THE CASE

Comes Now, Jaime Jalife, by and through undersigned counsel and in accordance with the Fed. R. Civ. P., to respond to Underwriters Motion to Dismiss and/or Transfer and states as follows:

### MATERIAL FACTS

1. The Underwriters insured the Vessel known as Mamma Mia.

2. Jaime Jalife and/or Varadam Foundation were named as the insured.

3. On May 24, 2005 the Underwriters renewed the Vessel's insurance policy ("the First Policy").

4. The First Policy contained a navigational warranty that included all of the Caribbean Sea.

5. At that time, the Vessel was in its home port in Cancun and/or Puerto Aventuras, Mexico, within the Caribbean Sea and the Navigational Warranty of the First Policy.

5/aj

6.  On May 31, 2005 the Underwriters cancelled the First Policy and issued a new insurance policy ("Second Policy") with a different Navigational Warranty.

7.  The Second Policy contained a Navigational Warranty that warranted the Vessel not South of the Tropic of Cancer from June 1st to October 31, inclusive.

8.  Cancun/Puerto Aventuras is South of the Tropic of Cancer.

9.  The First and Second Policies both state that when the Underwriters cancel coverage, the cancellation will not take place until ten (10) days after written notice is given and that the cancelled coverage will continue for the next ten (10) days.

10. This means that the First Policy (and Navigational Warranty) was in effect until June 10, 2005; then the Second Policy (and its Navigational Warranty) would take effect.

11. On June 5, 2005, the Vessel experienced a loss due to a grounding in the Caribbean Sea, while preparing to move North of the Tropic of Cancer by June 10, 2005.

12. The loss occurred in the Caribbean Sea, before June 10, 2005 and was therefore covered by the First Policy.

13. The loss was reported to the Underwriters on June 6, 2005.

14. On Monday June 13, 2005 Mr. Jalife learned that the Underwriters refused to cover the loss.

15. One week later, the Underwriters raced to the Delaware Courthouse to file a declaratory action against the Varadam Foundation and Jaime Jalife citing, as their reason for denying the claim, the Navigational Warranty of the Second Policy, which was not in effect on the date of the loss.

16. Mr. Jalife filed a breach of marine contract and declaratory action in this Court.

17. Varadam moved to Transfer the Case from the Delaware Court to this Court. The Delaware Court denied its motion only as to Varadam.

18. Mr. Jalife has not been served in the Delaware action and is not subject to personal jurisdiction in Delaware.

19. On the heels of the ruling from the Delaware Court, Underwriters have filed this Motion.

ARGUMENT

The Underwriters motion is indiscriminate in terms of the authority they wish to rely on to dismiss or transfer the case. The Underwriters cite to Fed. R. Civ. P. 12(b)(3), Fed. R. Civ. P. 12(b)(7) and 28 U.S.C. § 1404 as the basis for both transfer and/or dismissal without setting forth the standard, citing any case law or composing a memorandum of law for any of these authorities relied upon. Finally, the Underwriters cite to the common law based "first filed" rule – the only basis for transfer supported by case law citations.

Notwithstanding the Underwriters' fatal failure to initially carry their burden as movant under Fed. R. Civ. P. 12(b)(3), Fed. R. Civ. P. 12(b)(7) and 28 U.S.C. § 1404, Jaime Jalife will respond to the Motion in full. Further, Jalife then defends its position against the "first filed argument."

Dismissal Pursuant to 12(b)(3)

Underwriters raise Fed. R. Civ. P. 12(b)(3) as a basis for dismissing Jaime Jalife's Complaint. (DE 4, Page 1, 7). Rule 12(b)(3) allows a Defendant, prior to filing a Responsive Pleading, to move the Court for dismissal of the Complaint due to "improper venue." However, Underwriters own insurance policy contains a provision agreeing to and

waiving its objections to venue and jurisdiction within the United States. In pertinent part, the Policy states:

> It is agreed that in the event of the failure of the Underwriters severally subscribing this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America. See Attachment 1.

This provision not only waives the Underwriters objection to venue but also waives its objection to personal jurisdiction. This is an admiralty action for breach of a marine insurance contract under 28 U.S.C. § 1333 and a declaratory action under 28 U.S.C. § 2201 empowering this Court with subject matter jurisdiction over this action. As the Southern District of Florida is a court of competent jurisdiction within the United States of America, the Underwriters have waived their venue defense via their own policy. As such, the Court should deny dismissal of this case pursuant to Fed. R. Civ. P. 12(b)(3).

Dismissal Pursuant to 12(b)(7)

Despite failing to cite any case law supporting their position, Underwriters seek dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(7) stating that the Court should dismiss the case because Varadam Foundation a party "obviously necessary for the just adjudication of this dispute" and that not joining Varadam could subject the Underwriters to "liability for two separate judgments for the same alleged damages." (DE 4, ¶ 26). Although cited nowhere, Underwriters seemingly base this on Fed. R. Civ. P. 19(a)(2)(ii) which states in pertinent part: "that a person is to be joined in an action if (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

If the Court determines that Varadam is to be joined in this action pursuant to Fed. R. Civ. P. 19(a)(2)(ii), Jaime Jalife will not object and, as sole shareholder of the Varadam Foundation, will join Varadam as a Plaintiff.  As such, this Court will then have subject matter jurisdiction, personal jurisdiction and will be the proper venue for this action as opposed to the District Court of Delaware, which will not have personal jurisdiction over Jaime Jalife, individually.  This will extinguish any claim by the Underwriters for dismissal under Rule 19 as dismissal under 12(b)(7) can only ripen under Rule 19(b).

Rule 19 (b) provides that when a person described by Rule 19 (a) cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."

Because the Court has not reached this point, dismissal is improper.  However, assuming *arguendo*, this Court was to reach the second step in a Rule 19 analysis, Varadam would not be considered an indispensable party.

The factors to be considered by the Court under Rule 19(b) when determining a whether a party is indispensible include: "first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." *Carpenters 46 N. Cal. Counties Joint Apprenticeship & Training Comm. v. Eldredge*, 459 U.S. 917, 920 (1982).

The four factors were designed to replace the formalistic labels "necessary" and "indispensable" which were previously assigned to parties in an effort to distinguish between them. *Tick v. Cohen*, 787 F.2d 1490 (11th Cir. 1996). "To say that a court 'must' dismiss in the absence of an indispensable party and that it 'cannot proceed' without him <u>puts the matter the wrong way around</u>: a court does not know whether a particular person is 'indispensable' until it has examined the situation to determine whether it can proceed without him." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (U.S. 1968) (underlining added).

Varadam is a single purpose corporation, wholly owned by Jaime Jalife, created to hold the Vessel Mamma Mia. The insurance policy issued by the Underwriters recognized and anticipated this when naming Jaime Jalife and/or the Varadam Foundation as the insured on the Policy. When taking the four factors into consideration, it can easily be said that no prejudice to Varadam will occur if a judgment is rendered in the absence of the Varadam, that protective provisions in the judgment would most certainly lessen, avoid and/or extinguish any concerns and that any rendered judgment would most certainly be adequate.

As such, even if the Court were to reach a Rule 19(b) analysis, an instructive look into Varadam would reveal that it is not an indispensable party to this action. Therefore, based on the fact that Varadam could be joined under Rule 19(a) and is not an indispensable party within the meaning of Rule 19(b), the action should not be dismissed under Fed. R. Civ. P. 12(b)(7).

<u>Transfer Under 28 U.S.C. § 1404</u>

Underwriters also cite 28 U.S.C. § 1404 as their basis for transferring the action to Delaware. (DE 4, Page 1 and 7). Once again, the Underwriters failed to meet their burden as

movant and cite no case law or standard for transferring the case under 28 U.S.C. § 1404. Their motion should be denied on this basis alone.

However, assuming the Court were to look at the factors under 28 U.S.C. § 1404, Jaime Jalife is confident the Court would find that the facts overwhelmingly favor the Southern District of Florida as the appropriate venue for this action.

Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Therefore, under this statute, when considering a motion to transfer venue, the court must balance several case-specific and often competing factors, including the convenience of the parties, the convenience of witnesses, and the interests of justice. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

The Delaware and Florida actions arise from the June 5, 2005 loss of the Vessel "Mamma Mia" in the Caribbean Sea off Puerto Aventuras, Mexico. Underwriters insured the Vessel "Mamma Mia". Jaime Jalife, as Record Owner of the Vessel, is an insured under that Policy. Varadam is a single purpose Delaware corporation created for the sole purpose of holding a single asset, the Vessel "Mamma Mia". Jaime Jalife, a citizen of the country of Mexico, is the beneficial owner of the Vessel. He has absolutely no contacts with the State of Delaware, does not conduct business in Delaware and has never been to Delaware. His sole tie to Delaware is that he is the one hundred percent shareholder of the Varadam Foundation, a Delaware Corporation. In addition, the Vessel has never traveled to Delaware. Mr. Jalife is not subject to personal jurisdiction within the State of Delaware.

On the other hand, Mr. Jalife, the beneficial owner of the Vessel, has substantial contacts in the Southern District of Florida. Mr. Jalife personally conducts business in Miami. Mr. Jalife is a partner in a corporation that conducts construction and real estate business in Miami. The subject Vessel has traveled throughout the Southern District of Florida. The Vessel was on its way to Miami before the loss and Miami was to be the new home port of the Vessel. Plaintiff and Defendant do business within the Southern District of Florida. The pertinent insurance brokers have a principal office within the Southern District of Florida. The Southern District of Florida is best suited for the convenience of the parties and witnesses and will promote the just and efficient conduct of this action. Almost all of the material witnesses are from Mexico and are Spanish-speaking. Travel between the country of Mexico and the Southern District of Florida is more efficient, less expensive, more frequent and less burdensome than travel from Mexico to Delaware. A recent internet search of travel between Cancun and Miami showed many inexpensive direct flights by many different carriers everyday. A recent internet search for travel between Cancun, Mexico and Wilmington, Delaware showed expensive and infrequent flights by fewer air carriers with no direct flights. Spanish translators are also in more abundance in Miami than they are in Delaware.

The filing of the action in Delaware by Underwriters as a preemptive strike by Underwriters is contrary to the spirit and meaning of the policy. Mr. Jalife is the party who suffered the loss. Mr. Jalife is the aggrieved party, not the Underwriters. The overall interests of justice, convenience to the parties and convenience to the witnesses all heavily favor the Southern District of Florida.

Most importantly, the Underwriters agreed to submit to any Court of competent jurisdiction within the United States of America "at the request of the Assured." See Attachment 1. Pursuant to the clause of the relevant policy, Varadam again requests the Underwriters submit to the jurisdiction of the Southern District of Florida.

<u>Transfer of Case Under First Filed Rule</u>

In absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case. However, when compelling or special circumstances are shown, they dictate the retention of the lawsuit filed second by the truly aggrieved party.

Defendants argue that the Court should dismiss this case based of the "first-filed" rule, which holds that when parties have instituted competing or parallel litigation in separate courts, the court initially having jurisdiction should hear the case. *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993). The Eleventh Circuit follows this rule. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982)

However, among the compelling circumstances that may <u>justify departing from the rule</u> are instances where one party, on notice of a potential law suit, files a declaratory judgment action in its home forum. See e.g., *Serco Serv. Co. v. Kelley Co.*, 51 F.3d 1037 (Fed.Cir. 1995); *Tempco Elec. Heater Corp. v. Omega Eng'g Inc.*, 819 F.2d 746 (7th Cir.1987); *Northwest*, 989 F.2d at 1007.

The forum where an action is first filed is usually given priority over subsequent actions, unless there is a showing of balance of convenience in favor of the second forum or there are <u>special circumstances</u> which justify giving the priority to the second action. *Kerotest Mfg. Co. V. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 72 S. Ct. 219, 96 L. Ed. 200

(1952); *West Gulf Maritime Assoc. v. ILA Deep Sea Local 24, South Atlantic & Gulf Coast Dist. Of the ILA; AFL-CIO*, 751 F.2d 721, 728 (5th Cir. 1985).

The "first to file" rule should not be rigidly applied. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 627 (9th Cir. 1991). Furthermore, where Jaime Jalife can show that there are special or compelling circumstances to disregard the "first filed rule", the Court may and should abandon the rule. *Allstate Ins. Co. v. Clohessy*, 9 F. Supp. 2d 1314, 1315-1316 (D. Fla. 1998).

When a party files a declaratory judgment action for purposes of "procedural fencing," the Court should disregard the action. See *High Croft*, 714 F. Supp. 1190 (S.D. Fla. 1979); *Franklin Life Insurance Co. v. Johnson*, 157 F.2d 653, 656 (10th Cir. 1946); *Shell Oil Co. v. Frusetta*, 290 F.2d 689, 692 (9th Cir. 1961); *Firemen's Insurance Co. of Newark, New Jersey v. Riley*, 322 F. Supp. 349, 351 (W.D. Ky. 1971).

The purpose behind the Declaratory Judgment Act is to afford a new form of relief from uncertainty and insecurity with respect to rights, status, and other legal relations. *Id*. (citing *Casualty and Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)).

The Act's remedy should not be utilized for the purpose of anticipating the trial of an issue in a court of coordinate jurisdiction. See *Firemen's Insurance Co. of Newark, New Jersey v. Riley*, 322 F. Supp. at 352. Moreover, the declaratory remedy is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff if he can beat the other party to the courthouse. *See State Farm v. Taylor*, 118 F.R.D. 426, 431 (M.D.N.C. 1988).

The "'proceeding for declaratory judgment is not intended to afford a defendant an opportunity to choose the forum nor to defend an imminent action by the opposite party [by

using a declaratory action] unless it appears only thus may his rights be fully protected.'" *Id.*, quoting *American Telephone & Telegraph v. Henderson*, 63 F. Supp. 347, 347 (N.D.Ga 1945). <u>Declaratory complaints filed in anticipation of a suit and used to forum shop are to be actively discouraged.</u> *General Star Indem. Co. v. Puckit, L.C.*, 818 F. Supp. 1526 (M.D. Fla. 1993).

Underwriters issued an insurance policy to Jaime Jalife on May 24, 2005 to cover his yacht, the M/Y Mamma Mia. At that time, coverage for the yacht included the area South of the Tropic of Cancer year-round. On May 31, 2005 the Underwriters issued another insurance policy canceling his insurance South of the Tropic of Cancer from June 1st to October 31st, inclusive. According to the policies, cancellation of coverage could not take place for ten days from the date of cancellation. This meant the navigational warranty stating that the yacht would not be covered if the vessel was south of the Tropic of Cancer from June 1st to October 1st inclusive would not actually take place until June 10, 2005.

On June 5, 2005, while Jaime Jalife was preparing to take his yacht to Miami (and North of the Tropic of Cancer) by June 10, 2005, his yacht was lost in an unfortunate grounding in the entrance to his home port in Puerto Aventuras, Mexico. According to the policy the loss was covered south of the Tropic of Cancer before June 10, 2005. As the loss occurred on June 5, 2005, it was covered.

Notice was provided to the Underwriters of the loss. On Friday, June 10, 2005 Underwriters issued a Reservation of Rights letter, immediately followed by a declination of coverage evidenced by their Complaint for Declaratory relief in the District Court of Delaware on Monday, June 20, 2005.

The aggrieved party and the true plaintiff, Jaime Jalife, named insured on the insurance policy written by the Underwriters, did not have the option to file his lawsuit as the Underwriters raced to the courthouse to edge out an injured party within 10 days of reserving their right to coverage!  In many respects the Delaware action is upside down.  *Casualty Indem. Exchange v. High Croft Enterprises, Inc.*, 714 F. Supp. 1190 (S.D. Fla. 1989).  The Delaware plaintiff is the defendant's insurer who, after denying coverage on plaintiff's claim, brought a declaratory judgment action against its own insured by racing the courthouse.  *Id.*

The filing of the action in Delaware by Underwriters was a preemptive strike by Underwriters and is contrary to the spirit and meaning of the policy.  Mr. Jalife is the party who suffered the loss and are the aggrieved parties, not the Underwriters.

To uphold the procedural fencing and arrogance of power demonstrated by the Underwriters and to allow the Underwriters to file their action on the heels of mailing their Reservation of Rights letter contravenes the spirit of the insurance policy as well as the fiduciary relationship between the parties.

<u>Conclusion</u>

The Underwriters have shown no basis for dismissal or transfer of this case.  Mr. Jalife asks this Court to retain jurisdiction over his Complaint and asks the Court not to dismiss or transfer the case.  As movants, the Underwriters have failed to meet their burden on each request.

Moreover, Jaime Jalife has not been served in the matter before the Delaware Court and even if served, would not be subject to personal jurisdiction in Delaware.  Forcing this case to be transferred to the District Court of Delaware because the Underwriters edged out an injured insured in a race to the Courthouse steps is contrary to the spirit and meaning of

the Policy, contrary to the Federal Rules of Civil Procedure, contrary to the Declaratory

Judgment Act and defies common sense and notions of fair play. Quite simply, Underwriters

have used their greater economic resources and global reach to create an unfair advantage

over Mr. Jalife.

**WHEREFORE**, Plaintiff Jaime Jalife respectfully asks this Court to deny the

Underwriters Motion to Dismiss and/or Transfer this Case.

Dated: October 21, 2005                              Respectfully Submitted,

**MOORE & COMPANY, P.A.**
355 Alhambra Circle, Suite 1100
Coral Gables, FL 33134
(786) 221-0600 (Telephone)
(786) 221-0601 (Fax)
michael@moore-and-co.net

**/s/ Michael T. Moore**
_____

Michael T. Moore, Esq.
Fla. Bar No. 207845
Scott Wagner, Esq.
Fla. Bar No. 10244

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via US

Mail on October 21st 2005 to all parties per the following service list:

**STROUP & MARTIN, P.A.**
Attorneys for Defendants
119 SE 12th Street (Davie Blvd.)
Fort Lauderdale, FL 33316
954-462-8808 (Telephone)
954-462-0278 (Fax)

**/s/ Michael T. Moore**

_____

Michael T. Moore, Esq.
Scott Wagner, Esq.